No. 97-728

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 84N

PATRICIA ROBERTS,

Plaintiff and Appellant,

v.

CARL OSTRUM,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary A. Ryder, Hysham, Montana

For Respondent:

Randall G. Nelson, Billings, Montana

Submitted on Briefs: December 17, 1998

Decided: April 20, 1999

Filed:

No

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Patricia Roberts (Roberts) appeals from the jury verdict and judgment entered by the Thirteenth Judicial District Court, Yellowstone County, in favor of Carl Ostrum (Ostrum). On November 11, 1994, Roberts was driving her car on a two-lane, one-way road in Billings. Ostrum, an 85 year-old man who suffers from senile dementia, entered this road from a side street controlled by a stop sign and struck Roberts' vehicle. Roberts brought this action to recover damages for head, neck, and shoulder injuries allegedly caused by Ostrum's negligent operation of his vehicle. We affirm.**

**¶3. At her October 8, 1996 deposition, Roberts testified that in April 1996, subsequent to the car accident, she suffered a back sprain as the result of a work-related accident. Roberts identified Janet Bjelland as her supervisor at work. When asked whether the work-related injury changed the symptoms she was experiencing from the car accident injuries, she stated, "It's made my entire back hurt again." When asked whether the work-related injury slowed her progress in healing her car accident injuries, Roberts replied, "yes," and stated that her "muscles are a lot weaker than before the [work-related] accident." She testified that she experienced more frequent headaches after her work-related injury. Roberts testified that Dr.**

Kathi Theade and Dr. Scott Callaghan had examined her in connection with her work-related injury. She also testified that she had filed a workers compensation claim with the state fund. Roberts never objected to any questions pertaining to the work-related injury during her deposition. In fact, at Ostrum's request, Roberts voluntarily produced the medical reports of Dr. Theade and Dr. Callaghan concerning her work-related injury.

¶4. Upon reviewing these medical reports, Ostrum discovered inconsistencies between Roberts' deposition and her doctors' reports concerning injuries resulting from the car accident. Dr. Theade reported that in questioning Roberts concerning her medical history, Roberts stated she had experienced no prior back injury. Dr. Callaghan reported that Roberts stated she had pain in her lower back, but did not have headaches or neck pain. In light of these reports, Ostrum thought it necessary to discover other related medical records. Ostrum filed a notice of records deposition and a subpoena duces tecum to obtain Roberts' workers compensation claim file concerning her April 1996 work-related injury. Roberts filed a motion for a protective order and a motion to quash the subpoena. The court denied Roberts' motions. After obtaining Roberts' file, Ostrum deposed Roberts' work supervisor, two of Roberts' co-workers, Dr. Theade, and Dr. Callaghan.

¶5. This action proceeded to trial in June 1997. The court admitted medical records and testimony showing that subsequent to her car accident, Roberts suffered an injury to her thoracic and lower back area in a work-related accident. This evidence also revealed inconsistencies in Roberts' statements concerning the pain and physical problems she experienced as a result of the car accident. Roberts' supervisor and co-workers testified that they were never aware of any physical limitations or pain resulting from a car accident which prevented Roberts from doing her job.

¶6. The jury ultimately found that Ostrum was negligent in the operation of his vehicle, but that his negligence was not the proximate cause of Roberts' injuries. The jury rendered a verdict in favor of Ostrum. Roberts raises three issues on appeal:

1. Did the court err in allowing discovery of Roberts' workers compensation claim and in allowing admission of medical testimony obtained thereby?

2. Did the court err in not permitting the investigating officer to give his opinion concerning the cause of the accident?

3. Did the court err in giving an instruction on the Basic Rule, § 61-8-303, MCA?

¶7. Did the court err in allowing discovery of Roberts' workers compensation claim and in allowing admission of medical testimony obtained thereby?

¶8. The doctor-patient privilege protects communications made between a patient and his or her doctor. Specifically, the doctor-patient privilege provides that, absent the patient's consent, a physician shall not be examined in a civil action concerning information acquired in attending the patient which was necessary to enable him or her to prescribe or act for the patient. Section 26-1-805, MCA. However, a patient waives the doctor-patient privilege by voluntarily giving information concerning doctor-patient communications. Similarly, when a patient claims damages for a physical or mental injury, he or she places the extent of that physical or mental injury at issue and waives the doctor-patient privilege to the extent that it is necessary for a defendant to discover whether the patient's current medical or physical condition is the result of some other cause. *See* State ex rel. Mapes v. Dist. Court (1991), 250 Mont. 524, 530, 822 P.2d 91, 94. Under such circumstances, the defendant is limited to discovery of only those prior physical or mental conditions which may relate to the damages claimed in the current action. Mapes, 250 Mont. at 530, 822 P.2d at 94-95.

¶9. Applying these rules to the instant case, Roberts waived her doctor-patient privilege by voluntarily producing the medical reports of the doctors who had treated her concerning her work-related injury. Moreover, Roberts waived her doctor-patient privilege simply by filing this personal injury suit and placing her physical injury or condition at issue.

¶10. We reject Roberts' argument that § 39-71-224(a), MCA, prevents disclosure of the contents of her workers compensation file. That statute exempts an employee's workers compensation file from the public's generalized "right to inspect" public records of the Department of Labor and Industry articulated in § 39-71-221, MCA. That statute in no way affects a litigant's right to legitimately obtain documentary evidence through the compulsory process. *See* Mapes, 250 Mont. at 530, 822 P.2d at 94-95; § 50-16-535(c), MCA.

¶11. We also reject Roberts' argument that her damages stemming from the work-related injury were wholly unrelated to her damages stemming from the car accident, making discovery of her workers compensation file beyond the scope of discovery allowed by Mapes. Roberts complained that the work-related injury aggravated her car accident injury, made her muscles sorer, and increased the frequency of headaches. Based on Roberts' remarks, we determine that the two injuries were sufficiently related to warrant Ostrum's further discovery into the proximate cause of Roberts' physical pain and discomfort. *See* Mapes, 250 Mont. at 530, 822 P.2d at 94-95. Furthermore, the medical records contradicted Roberts' testimony that she continued to have neck pain. Thus, the medical records were relevant in determining Roberts' credibility concerning the extent of damages resulting from her car accident injury.

¶12. Did the court err in not permitting the investigating officer to give his opinion concerning the cause of the accident, and did the court err in giving an instruction on the Basic Rule, § 61-8-303, MCA?

¶13. Rule 61, M.R.Civ.P., provides that an error which does not affect the substantial rights of a complaining party is harmless and is no basis for granting a new trial or setting aside a verdict. Here, the jury found that Ostrum was negligent in the operation of his vehicle. In light of the jury's finding, we hold that any error committed by the court in refusing to allow Officer Hirst to give opinion testimony concerning the cause of the car accident, or giving the instruction on the Basic Rule, was harmless.

¶14. Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

No

/S/ J. A. TURNAGE

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ JIM REGNIER